IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JEAN JOCELYN MERILIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 318-056 |
| | ) | |
| MS. GRANISON, Kitchen Manager, Johnson | ) | |
| State Prison; TARRA JACKSON, Chief | ) | |
| Counselor, Johnson State Prison; LAKEISHA | ) | |
| SMITH, CERT Officer, Johnson State Prison; | ) | |
| JASON HURST, Lieutenant, Johnson State | ) | |
| Prison; MR. SCOTT, CERT Officer, Johnson | ) | |
| State Prison; SHAWN EMMONS, Former | ) | |
| Warden, Johnson State Prison; ANTOINE | ) | |
| CALDWELL, Warden, Johnson State Prison; | ) | |
| and JAN MARTIN, Correctional Officer, | ) | |
| Johnson State Prison, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Plaintiff, an inmate at Wilcox State Prison ("WSP") in Abbeyville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia. Before the Court is Plaintiff's Emergency Motion for Restraining Order and Temporary and Permanent Injunctions. (Doc. no. 70.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion be **DENIED**.

## I.    BACKGROUND

In his amended complaint, Plaintiff names as Defendants:  (1) Ms. Granison, Kitchen

Manager of JSP; (2) Tarra Jackson, Chief Counselor of JSP; (3) Lakeisha Smith, CERT Officer

JSP; (4) Lt. Jason Hurst, JSP; (5) Officer Scott, JSP; (6) Shawn Emmons, former warden of JSP;

(7) Antoine Caldwell, Warden of JSP; and (8) Officer Jan Martin, JSP.  (Doc. no. 41, pp. 3-5.)

Plaintiff alleges the following facts in his amended complaint.

On March 21, 2017, Plaintiff was transferred from Hayes State Prison ("HSP") to JSP.

(Id. at 7.)  Prior to the transfer, several HSP inmates asked officials to give Plaintiff store goods

because Plaintiff did not have food.   (Id.)   The officers allowed inmates to give Plaintiff

approximately $178 in store goods and hygiene products and gave Plaintiff property receipts for

the items.  (Id.)  Plaintiff arrived at JSP with sixteen other inmates.  (Id.)  Defendants Hurst,

Smith, and Scott and an unknown CERT officer took the inmates to a gymnasium for orientation

and to inventory their belongings.  (Id.)  Many inmates had a substantial number of belongings,

but the officers singled out Plaintiff, cursing at him and asking him what island he was from

because he looked different and had an accent.  (Id.)  Plaintiff informed the officers he is from

Haiti. (Id.)

The officers separated Plaintiff and asked him to provide receipts for his store goods.

(Id.)  Plaintiff gave them the property sheets, but the officers told him property sheets are not

receipts and accused Plaintiff of stealing the goods.  (Id.)  The officers made Plaintiff "go back

and forth" while the other inmates watched.  (Id.)  Officers returned some of the goods to

Plaintiff but kept the rest for themselves without providing Plaintiff with a receipt.  (Id.)  Plaintiff

attempted to explain how he obtained the goods, but the officers mocked him for being Haitian

and not speaking English, cursed at him, threatened to write a disciplinary report against him for

stealing the goods, and threatened to put him in an isolation holding cell.  (Id.)  Officer Smith

pointed a stun gun at Plaintiff, threatened to shoot him, told him not to touch her food, and threatened to "lock him up." (Id.)

The officers did not treat the American inmates like Plaintiff, even though most did not have receipts or inmate personal property sheets, and allowed them to keep their food without any problem. (Id. at 8.) The officers also called Plaintiff an illegal immigrant and said "Trump will deport you from our country and sen[d] you back to your poor country Haiti." (Id.) The officers asked Plaintiff about his religious beliefs. (Id.) Plaintiff told them he is "Christian Catholic," but the officers accused Plaintiff of practicing voodoo, which made the inmates laugh at him. (Id.) Defendants Hurst, Smith, and Scott were deliberately indifferent to Plaintiff's health and safety and failed to protect him like other prisoners in the same situation due to his race, nationality, religion, crimes, conviction, language, and immigration status. (Id. at 10.) These Defendants also violated Georgia Department of Corrections ("GDC") policy by failing to provide Plaintiff with a receipt for the goods they retained. (Id.)

On November 22, 2018, Plaintiff told Warden Emmons about these events and showed him the property receipts from HSP. (Id. at 8.) Warden Emmons promised Plaintiff he would make sure the officers returned his store goods, but he did not follow up on his promise. (Id.) Warden Emmons could have prevented the officers' misconduct by reviewing the video recording of the gymnasium, but he did not do so. (Id. at 12.) Instead, Warden Emmons cursed at Plaintiff, told him he did not care, and told him to get out of his office. (Id.) Warden Emmons was deliberately indifferent to Plaintiff's health and safety and failed to protect him like similarly situated prisoners. (Id. at 11.)

The same day, Plaintiff wrote a grievance against the officers concerning the misconduct.

3

(Id. at 8.)  Plaintiff attempted to submit the grievance to Defendant Jackson, but she refused to sign the grievance for retaliatory purposes.  (Id.)  Defendant Jackson threatened to write a disciplinary report for the stolen goods and put Plaintiff in isolation if he submitted the grievance against the officers.  (Id.)  Defendant Jackson called the officers into the room, and they cursed at and insulted Plaintiff and threatened to take him to the hold and beat him to death if he filed the grievance.  (Id.)  After they left, another counselor accepted the grievance from Plaintiff and explained Defendant Jackson should have accepted the grievance and did not do so because she is related to two of the officers.  (Id. at 8-9.)  Defendant Jackson was deliberately indifferent to Plaintiff's health and safety and failed to protect him like similarly situated prisoners based on retaliation.  (Id. at 11.)

From March 27, 2017, through April 8, 2017, Defendant Granison intentionally denied Plaintiff "diet trays" containing no meat and fish.  (Id. at 9.)  Another officer instructed Defendant Granison to provide Plaintiff with meals without meat because he does not eat meat, fish, or eggs.  (Id.)  Plaintiff starved for thirteen days.  (Id.)  Defendant Granison insulted and harassed Plaintiff every time he was in the kitchen, cursed him, and questioned his dietary restrictions.  (Id.)  On April 9, 2017, a JSP captain was in the kitchen with the sergeant, who oversees the kitchen.  (Id.)  The sergeant explained Defendant Granison's actions toward Plaintiff to the captain, and the captain called the warden, who immediately came to the kitchen, told Defendant Granison she was wrong, and instructed her to give Plaintiff a meal tray without meat, fish, and egg for every meal because Plaintiff is vegetarian.  (Id.)  Defendant Granison was deliberately indifferent to Plaintiff's health and safety failed to protect him like similarly situated prisoners, and acted out of retaliation and racial discrimination.  (Id. at 11.)

On April 5, 2018, Plaintiff was transferred back to JSP for a court date on April 10, 2018. (Id. at 9.)  Warden Caldwell threatened to punish Plaintiff for the grievances and lawsuit filed against the other Defendants.  (Id.)  Warden Caldwell had officers place Plaintiff in a holding cell for isolation for twenty-one days with a Blood gang member, who had recently stabbed another inmate, as a means for Plaintiff to be injured.  (Id.)  Plaintiff did not receive a blanket, sheet, pillow, or change of clothes, and slept on a dirty mattress.  (Id.)  Warden Caldwell instructed Defendant Granison not to provide vegetarian trays to Plaintiff.  (Id.)  Some days, Plaintiff did not receive a meal and occasionally went three to four days without a shower.  (Id.) The cell was unsanitary because the bathroom would overflow and not drain for days, leaving feces on the floor.  (Id. at 10.)  Plaintiff starved for twenty-one days in retribution for his grievances and lawsuit.  (Id.)  Warden Caldwell also retaliated by intentionally withholding Plaintiff's application for clemency or commutation and never sent it to the state parole board for over a year.  (Id.)  The board would have granted him pardon, clemency, or commutation early if they received the application.  (Id.)  Warden Caldwell was deliberately indifferent to Plaintiff's health and safety and failed to protect him like similarly situated prisoners.  (Id. at 12.)

As a result of Defendants' actions, Plaintiff suffered starvation, humiliation, physical injuries, migraine headaches, stomachaches, dizziness, extreme emotional distress, and mental anguish.  (Id.)  Plaintiff was transferred to WSP from JSP out of retaliation.  (Id.)  Plaintiff's injuries resulted from GDC and Wardens Emmons and Caldwell failing to train their officers. (Id.)

On December 14, 2018, Plaintiff filed a motion for injunctive relief, asking the Court to order:  (1) Defendant Emmons and GDC to provide Plaintiff with tennis shoes, allow Plaintiff to

wear his tennis shoes during visitation, and prevent officials from harassing Plaintiff about wearing tennis shoes; (2) Defendant Emmons, GDC, and the prison kitchen manager to provide vegetarian meals based on his religious beliefs; and (3) Defendant Emmons and GDC to return the store goods worth $178 the officers took from him.  (Doc. no. 70.)

First, Plaintiff alleges Defendant Emmons illegally took his state shoes or boots and made him wear orange crocs.  (Id. at 1.)  Plaintiff alleges the crocs cause his feet to become cold and wet, causing him coughs, colds, and fevers.  (Id.)  Warden Emmons refused to provide a medical tennis shoe profile so Plaintiff can wear the shoes his family purchased, even though other inmates wear their own tennis shoes.  (Id.)

Second, Plaintiff alleges Defendants refused to provide vegetarian diet trays for Plaintiff based on his religious beliefs.  (Id. at 2.)  Defendants force Plaintiff to receive vegan trays, which contain "unclean food because it's not special vegetable since they have fake vegan's meat, eggs in them."  (Id.)  Plaintiff cannot eat these foods, so he is forced to give it to other inmates and not eat.  (Id.)  Finally, Plaintiff alleges Defendants illegally took $178 in store goods from Plaintiff, even though he had a receipt proving his ownership, and Plaintiff does not have funds in his inmate account to purchase additional store goods.  (Id.)

## II.   DISCUSSION

### A.   Tennis Shoes

Plaintiff is not entitled to injunctive relief as to his complaints about his shoes because the matters complained of are concerning separate incidents than his claims in this lawsuit, which are outlined in detail above.  "A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly

outside the issues in the suit." <u>Kaimowitz v. Orlando, Fla.</u>, 122 F.3d 41, 43 (11th Cir. 1997), *opinion amended on other grounds on reh'g*, 131 F.3d 950 (11th Cir. 1997); <u>see also</u> <u>Bruce v. Reese</u>, 431 F. App'x 805, 806 (11th Cir. 2011) ("[Plaintiff's] request for injunctive relief as to those causes of action was thus properly denied as they were as outside the scope of the underlying suit.") (citations omitted); <u>Head v. Gammage</u>, CV 316-039, 2018 WL 1920171, at *2 (S.D. Ga. Apr. 24, 2018) (denying Plaintiff's request for injunctive relief because relief sought concerned computer access and suit concerned defendants' failure to protect him from substantial risk of serious harm).   Additionally, Plaintiff does not raise these allegations in his proposed amendments to his complaint.  (<u>See</u> doc. no. 69.)  Because these allegations are factually distinct and concern issues separate from the claim raised in his complaint, injunctive relief is improper.

    **B.    Vegetarian Meals**

    Plaintiff seeks relief regarding his vegetarian meal requests from an unnamed "prison kitchen manager." (Doc. no. 70, p. 4.)  Plaintiff is currently incarcerated at WSP.  (<u>See</u> <u>id.</u> at 5.)  However, Defendants are present or former employees of JSP, (doc. no. 41, pp. 3-5), and Plaintiff does not allege any Defendants are currently employed at WSP or exercise control over what meals are provided there.  While Plaintiff alleges in his complaint he returned to JSP to attend a court date in April of 2018, (doc. no. 41, p. 9), there is no indication he has returned since or will return in the future.  Accordingly, the only relief Plaintiff could possibly obtain regarding his meals would be against nonparties.  However, the Court lacks jurisdiction to enter any restraining order or injunction against nonparties.  <u>Holmes v. Williams</u>, No. 6:15-cv-12, 2015 WL 4429092, at *8 (S.D. Ga. July 20, 2015) (citing <u>In re Infant Formula Antitrust Litig.</u>,

MDL 878 v. Abbott Labs., 72 F.3d 842, 842-43 (11th Cir. 1995)).  Thus, the Court cannot grant the injunctive relief Plaintiff seeks.

### C.    Store Goods

 Finally, Plaintiff is not entitled to injunctive relief regarding his store goods claims.  A party moving for injunctive relief must show the following:  "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).  "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983)).

Plaintiff cannot show a substantial likelihood of success on the merits as to this claim. Plaintiff alleges Defendants Hurst, Smith, and Scott illegally took his store goods when he was transferred to JSP, even though he had proof of ownership.  (Doc. no. 41, pp. 7, 11.)  However, the Fourteenth Amendment does not protect against all deprivations of property, only against deprivations that occur "without due process of law." Parratt v. Taylor, 451 U.S. 527, 537 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-31 (1986). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."

Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Georgia has created a civil cause of action for

the wrongful deprivation of personal property.  O.C.G.A. § 51-10-1.  This statutory provision

covers the unauthorized deprivation of an inmate's property by prison officials.  Grant v.

Newsome, 411 S.E.2d 796, 799 (Ga. App. 1991).  The statutory cause of action constitutes

an adequate post-deprivation remedy under Parratt.  See Byrd v. Stewart, 811 F.2d 554, 555

n.1 (11th Cir. 1987).  Thus, Plaintiff cannot show a substantial likelihood of success on the

merits regarding his deprivation of property claim and is not entitled to the relief he seeks.

**III.   CONCLUSION**

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's

motion for injunctive relief be **DENIED**.  (Doc. no. 70.)

SO REPORTED and RECOMMENDED this 17th day of January, 2019, at Augusta,

Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA