IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JEAN JOCELYN MERILIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 318-056 |
| | ) | |
| MS. GRANISON, Kitchen Manager, Johnson | ) | |
| State Prison; TARRA JACKSON, Chief | ) | |
| Counselor, Johnson State Prison; LAKEISHA | ) | |
| SMITH, CERT Officer, Johnson State Prison; | ) | |
| JASON HURST, Lieutenant, Johnson State | ) | |
| Prison; MR. SCOTT, CERT Officer, Johnson | ) | |
| State Prison; SHAWN EMMONS, Former | ) | |
| Warden, Johnson State Prison; ANTOINE | ) | |
| CALDWELL, Warden, Johnson State Prison; | ) | |
| and JAN MARTIN, Correctional Officer, | ) | |
| Johnson State Prison, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Wilcox State Prison in Abbeyville, Georgia, is proceeding *pro se* in this case filed pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia.  Plaintiff initiated this case in the Superior Court of Johnson County, Georgia, and, on August 10, 2018, Defendants removed the case to this Court and paid the filing fee.  (Doc. no. 1.)  Notwithstanding the payment of the filing fee, the case or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See Leal v. Georgia Dep't of Corr., 254 F.3d 1276,

1277-78 (11th Cir. 2001) (*per curiam*); 28 U.S.C. § 1915A.  Accordingly, the Court screens Plaintiff's amended complaint herein and **REPORTS** and **RECOMMENDS** Plaintiff's claims against Defendants Jackson, Smith, Hurst, Scott, Emmons, and Martin be **DISMISSED** for failure to state a claim upon which relief may be granted, and Defendants Jackson, Smith, Hurst, Scott, Emmons, and Martin be **DISMISSED** from this case.

Also before the Court is Defendants Emmons, Jackson, Granison, Caldwell, and Martin's motion to dismiss, (doc. no. 83), which should be **DENIED AS MOOT** as to Defendants Emmons, Jackson, and Martin in light of the Court's screening of the amended complaint, and **GRANTED IN PART** and **DENIED IN PART** as to Defendants Caldwell and Granison.   In a companion Order, the Court allows to proceed Plaintiff's First Amendment retaliation and Eighth Amendment conditions of confinement claims against Warden Caldwell and Plaintiff's First Amendment free exercise, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and Eighth Amendment conditions of confinement claims against Defendant Granison.  Finally, the Court recommends Plaintiff's motions to amend, motion regarding service, and motions for sanctions, default judgment, and summary judgment be **DENIED**, (doc. nos. 69, 99, 98, 106, 107, 109), and the remaining pending motions be **DENIED AS MOOT**.

I.      **SCREENING OF THE AMENDED COMPLAINT**

        A.      **BACKGROUND**

        In his amended complaint, Plaintiff names as Defendants:  (1) Ms. Granison, Kitchen Manager of JSP; (2) Tarra Jackson, Chief Counselor of JSP; (3) Lakeisha Smith, CERT Officer JSP; (4) Lt. Jason Hurst, JSP; (5) Officer Scott, JSP; (6) Shawn Emmons, former warden of JSP;

(7) Antoine Caldwell, Warden of JSP; and (8) Officer Jan Martin, JSP.  (Doc. no. 41, pp. 3-5.)

Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present

screening, the facts are as follows.

On March 21, 2017, Plaintiff was transferred from Hayes State Prison ("HSP") to JSP.

(Id. at 7.)  Prior to the transfer, several HSP inmates asked officials to give Plaintiff store goods

because Plaintiff did not have food.   (Id.)   The officers allowed inmates to give Plaintiff

approximately $178 in store goods and hygiene products and gave Plaintiff property sheets for

the items.  (Id.)  Plaintiff arrived at JSP with sixteen other inmates.  (Id.)  Defendants Hurst,

Smith, and Scott and an unknown CERT officer took the inmates to a gymnasium for orientation

and to inventory their belongings.  (Id.)  Many inmates had a substantial number of belongings,

but the officers singled out Plaintiff, cursing at him and asking him what island he was from

because he looked different and had an accent.  (Id.)  Plaintiff informed the officers he is from

Haiti.  (Id.)

The officers separated Plaintiff and asked him to provide receipts for his store goods.

(Id.)  Plaintiff gave them the property sheets, but the officers told him property sheets are not

receipts and accused Plaintiff of stealing the goods.  (Id.)  The officers made Plaintiff "go back

and forth" while the other inmates watched.  (Id.)  Officers returned some of the goods to

Plaintiff but kept the rest for themselves without providing Plaintiff with a receipt.  (Id.)  Plaintiff

attempted to explain he obtained the goods from other inmates at HSP, but the officers mocked

him for being Haitian and not speaking English, cursed at him, threatened to write a disciplinary

report against him for stealing the goods, and threatened to put him in an administrative

segregation isolation holding cell.  (Id.)  Officer Smith pointed a stun gun at Plaintiff, threatened

3

to shoot him, told him not to touch her food, and threatened to "lock him up."  (Id.)

The officers did not treat the American inmates like Plaintiff, even though most did not have receipts or inmate personal property sheets, and allowed them to keep their food without any problem.  (Id. at 8.)  The officers also called Plaintiff an illegal immigrant and said "Trump will deport you from our country and sen[d] you back to your poor country Haiti."  (Id.)  The officers asked Plaintiff about his religious beliefs.  (Id.)  Plaintiff told them he is "Christian Catholic," but the officers accused Plaintiff of practicing voodoo, which made the inmates laugh at him.  (Id.)  Defendants Hurst, Smith, and Scott were deliberately indifferent to Plaintiff's health and safety and failed to protect him like other prisoners in the same situation due to his race, nationality, religion, crimes, conviction, language, and immigration status.  (Id. at 10.)  These Defendants also violated Georgia Department of Corrections ("GDC") policy by failing to provide Plaintiff with a receipt for the goods they retained.  (Id.)

On November 22, 2018, Plaintiff told Warden Emmons about these events and showed him the property receipts from HSP.  (Id. at 8.)  Warden Emmons promised Plaintiff he would make sure the officers returned his store goods, but he did not follow up on his promise.  (Id.)  Warden Emmons could have prevented the officers' misconduct by reviewing the video recording of the gymnasium, but he did not do so.  (Id. at 12.)  Instead, Warden Emmons cursed at Plaintiff, told him he did not care, and told him to get out of his office.  (Id.)  Warden Emmons was deliberately indifferent to Plaintiff's health and safety and failed to protect him like similarly situated prisoners.  (Id. at 11.)

The same day, Plaintiff wrote a grievance against the officers concerning the misconduct.  (Id. at 8.)  Plaintiff attempted to submit the grievance to Defendant Jackson, but she refused to

sign the grievance for retaliatory purposes.  (Id.)  Defendant Jackson threatened to write a disciplinary report for the stolen goods and put Plaintiff in isolation if he submitted the grievance against the officers.  (Id.)  Defendant Jackson called the officers into the room, and they cursed at and insulted Plaintiff and threatened to take him to the hold and beat him to death if he filed the grievance.  (Id.)  After they left, another counselor accepted the grievance from Plaintiff and explained Defendant Jackson should have accepted the grievance and did not do so because it related to two of the officers.  (Id. at 8-9.)  Defendant Jackson was deliberately indifferent to Plaintiff's health and safety and failed to protect him like similarly situated prisoners based on retaliation.  (Id. at 11.)

From March 27, 2017, through April 8, 2017, Defendant Granison intentionally denied Plaintiff "diet religious vegeteri[an] trays" containing no meat, fish, or eggs.  (Id. at 9, 11.) Another officer instructed Defendant Granison to provide Plaintiff with meals without meat because he does not eat meat, fish, or eggs.  (Id. at 9.) Plaintiff starved for thirteen days.  (Id.) Defendant Granison insulted and harassed Plaintiff every time he was in the kitchen, cursed him, and questioned his dietary restrictions.  (Id.)  On April 9, 2017, a JSP captain was in the kitchen with the sergeant, who oversees the kitchen.  (Id.)  The sergeant explained Defendant Granison's actions toward Plaintiff to the captain, and the captain called the warden, who immediately came to the kitchen, told Defendant Granison she was wrong, and instructed her to give Plaintiff a meal tray without meat, fish, and eggs for every meal because Plaintiff is vegetarian.  (Id.) Defendant Granison was deliberately indifferent to Plaintiff's health and safety, failed to protect him like similarly situated prisoners, and acted out of retaliation and racial discrimination.  (Id. at 11.)

On April 5, 2018, Plaintiff was transferred back to JSP for a court date on April 10, 2018. (Id. at 9.)  Warden Caldwell threatened to punish Plaintiff for the grievances and lawsuit filed against the other Defendants.  (Id.)  Warden Caldwell had officers place Plaintiff in a holding cell for administrative segregation isolation for twenty-one days with a Blood gang member, who had recently stabbed another inmate, as a means for Plaintiff to be injured.  (Id.)  Plaintiff did not receive a blanket, sheet, pillow, or change of clothes, and slept on a dirty mattress.  (Id.)  Warden Caldwell instructed Defendant Granison not to provide vegetarian trays to Plaintiff. (Id.)  Some days, Plaintiff did not receive a meal and occasionally went three to four days without a shower.  (Id.)  The cell was unsanitary because the bathroom would overflow and not drain for days, leaving feces on the floor.  (Id. at 10.)  Plaintiff starved for twenty-one days in retribution for his grievances and lawsuit.  (Id.)  Warden Caldwell also retaliated by intentionally withholding Plaintiff's application for clemency or commutation and never sent it to the state parole board.  (Id.)  The board would have granted him pardon, clemency, or commutation early if they received the application.  (Id.)  Warden Caldwell was deliberately indifferent to Plaintiff's health and safety and failed to protect him like similarly situated prisoners.  (Id. at 12.)

As a result of Defendants' actions, Plaintiff suffered starvation, humiliation, physical injuries, migraine headaches, stomachaches, dizziness, extreme emotional distress, and mental anguish.  (Id.)  Plaintiff was transferred to WSP from JSP out of retaliation.  (Id.)  Plaintiff's injuries resulted from GDC and Wardens Emmons and Caldwell failing to train their officers. (Id.)

**B.      DISCUSSION**

### 1.      Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. § 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 327 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked

assertions' devoid of 'further factual enhancement.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Twombly</u>, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the amended complaint. <u>Snow v. DirecTV, Inc.</u>, 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Due Process Claim Against Defendants Smith, Hurst, and Scott for Deprivation of Property

Plaintiff argues Defendant Smith, Hurst, and Scott violated his constitutional rights by taking his store goods during the intake process. The Fourteenth Amendment does not protect against all deprivations of property, only against deprivations that occur "without due process of law." <u>Parratt v. Taylor</u>, 451 U.S. 527, 537 (1981), *overruled on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986). Georgia has created a civil cause of action for the wrongful deprivation of personal property. O.C.G.A. § 51-10-1. This statutory provision covers the unauthorized deprivation of an inmate's property by prison officials. <u>Grant v. Newsome</u>, 411 S.E.2d 796, 799 (Ga. App. 1991). The statutory cause of action constitutes an adequate post-deprivation remedy under <u>Parratt</u>. <u>See Byrd v. Stewart</u>, 811 F.2d 554, 555 n.1 (11th Cir. 1987). Thus, Plaintiff has an adequate remedy at State law, and he fails to state a valid § 1983 due process claim based on the deprivation of his property.

In his amended complaint, Plaintiff does not raise any state law claims based on Defendants' alleged actions.  (<u>See</u> doc. no. 41.)  Indeed, in his February 4, 2019 objections, Plaintiff asks the Court to remand the entire case to state court to consider any possible state claims.  However, Plaintiff's request to remand is procedurally improper.  <u>See</u> § IV, *infra*.  Furthermore, to the extent Plaintiff seeks to bring state law claims based on these allegations, the Court should decline to exercise supplemental jurisdiction over the state law claims if these Defendants are dismissed from this lawsuit, as the Court recommends herein.  Accordingly, Plaintiff may, if he chooses, pursue any state law remedies based on the alleged deprivation of property in state court.

### 3. Plaintiff Fails to State a Claim Based on Allegations of Insults and Threats by Defendants

Plaintiff attempts to bring Eighth Amendment claims against Defendants Smith, Hurst, Scott, Foreman, Jackson, Granison, and Caldwell for using insulting and threatening language against him based on his race and nationality.  (Doc. no. 41, pp. 7-9.)  However, mere "allegations of verbal abuse and threats by prison officers" are not sufficient to state an Eighth Amendment claim.  <u>Hernandez v. Fla. Dep't of Corr.</u>, 281 F. App'x 862, 866 (11th Cir. 2008) (dismissing plaintiff's Eighth Amendment claim because "verbal abuse alone is insufficient to state a constitutional claim") (citing <u>Edwards v. Gilbert</u>, 867 F.3d 1271, 1274 n.1 (11th Cir. 1989)).  Additionally, "derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or professional, do not rise to the level of a constitutional violation."  <u>Leonard v. Scott</u>, No. 17-14248-CIV-ROSENBERG, 2017 WL

9

8772149, at *9 (S.D. Fla. Oct. 6, 2017).  Accordingly, fails to state an Eighth Amendment claim against these Defendants for their insulting and threatening language.

### 4.   Plaintiff Fails to State an Equal Protection Claim against Defendants

"To establish an equal protection claim, a prisoner must demonstrate (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001); see also Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) (requiring plaintiff to demonstrate challenged action was motivated by intent to discriminate in order to establish equal protection violation).  A "class of one" exists where a plaintiff has been intentionally treated differently from others similarly situated without justification.  Thorne v. Chairperson Fla. Parole Comm'n, 427 F App'x 765, 771 (11th Cir. 2011) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).  "To be 'similarly situated,' the comparators must be prima facie identical in all relevant respects."  Id. (internal quotations omitted) (quoting Grider v. City of Auburn, Ala., 618 F.3d 1240, 1264 (11th Cir. 2010)).  Furthermore, a plaintiff must "describe the comparator's characteristics 'that would be relevant to an objectively reasonable governmental decisionmaker'" in detail.  Alvarez v. Sec'y Fla. Dep't of Corr, 646 F. App'x 858, 863-64 (11th Cir. 2016) (quoting Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1207 (11th Cir. 2007),

Plaintiff does not establish an equal protection claim against Defendants Smith, Hurst, and Scott based on their actions during the intake process.  Plaintiff alleges he informed the

officers he did not have receipts for the store goods because he received them from other inmates at HSP.  (Doc. no. 41, p. 7.)  While Plaintiff alleges some other inmates also had numerous store goods and did not have receipts for them, he does not allege they received the goods from other inmates instead of purchasing the goods themselves.  (Id.)  Indeed, Plaintiff does not allege any facts concerning from where the other inmates received their goods.  This characteristic would have been relevant to an objectively reasonable governmental decisionmaker, as it casts doubt on whether Plaintiff was in proper possession of the store goods.  In fact, Plaintiff alleges the officers determined the store goods were stolen based on their discussion with Plaintiff and his explanation of receiving the goods from other inmates rather than purchasing them himself.  (Id. at 7, 10-11.)  The connection between Plaintiff's statements about the origin of the store goods and the officers' conclusion the goods were stolen is strengthened by the fact Plaintiff did not allege the officers suspected any of the other inmates' store goods to have been stolen.  Thus, Plaintiff does not establish the other prisoners were similarly situated because he failed to describe relevant characteristics of comparators; namely, whether they also received their store goods from other inmates instead of the inmate store.  In short, Plaintiff's allegations fail to establish he was treated differently from other similarly situated individuals and fails to state an equal protection claim against Defendants Smith, Hurst, and Scott.

As to Plaintiff's allegations regarding:  (1) Warden Emmons's alleged failure to remedy the officers' actions; (2) Defendant Granison's alleged failure to give Plaintiff vegetarian meals, and (3) Defendant Jackson's alleged refusal to sign Plaintiff's grievance form, Plaintiff does not allege facts suggesting there were any comparators whatsoever, let alone any that

were similarly situated to Plaintiff and received more favorable treatment.  Furthermore, Plaintiff does not allege facts suggesting Defendants Emmons and Jackson's behavior was discriminatory based on any protected class.  In fact, Plaintiff indicates Defendant Jackson's actions were caused by her relationship with the intake officers, not based on a discriminatory motive.  (Doc. no. 41, pp. 8-9.)  Accordingly, Plaintiff fails to state an equal protection claim against Defendants Emmons, Granison, and Jackson.

### 5. Plaintiff Fails to State a Claim Against Defendants Smith, Hurst, Scott, Jackson, and Granison for Their Alleged Retaliatory Threats

Plaintiff seeks to bring a claim against Defendants Smith, Hurst, Scott, and Jackson for threatening him with bodily harm or death if Plaintiff filed a grievance based on Defendants Smith, Hurst, and Scott's actions during the intake process.  (Doc. no. 41, p. 8.)  Additionally, Plaintiff alleges Defendant Granison retaliated against him for filing grievances by denying him vegetarian meals.  (Id. at 11.)

To state a First Amendment retaliation claim based on a threat, a plaintiff must allege "'(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.'"  Hoever v. Hampton, No. 4:14cv273-WS/CAS, 2016 WL 3647596, at *3 (N.D. Fla. May 19, 2016) (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008)).  However, "threats that are not carried out and that do not deter a plaintiff from engaging in speech are not actionable as retaliation."  Bishop v. McLaughlin, No. 5:11-CV-107(MTT), 2012 WL 1029507, at *4 (M.D. Ga. Jan. 23, 2012), adopted in part by 2012 WL 1029499, at *8

12

(M.D. Ga. Mar. 26, 2012) (citing Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1292 n.13 (11th Cir. 2002)).

Here, Plaintiff clearly determined Defendants Smith, Hurst, Scott, and Jackson's alleged threats were not legitimate, because Plaintiff alleges he filed the grievance with another counselor immediately thereafter.  (Doc. no. 41, pp. 8-9.)  Because of Plaintiff's immediate filing, the Court may infer Defendants' threats were not enough to deter a person of ordinary firmness from filing the grievance.  Moreover, Plaintiff does not allege these Defendants attempted to carry out the alleged threats after he filed the grievance.  Finally, Plaintiff alleges no facts suggesting Defendant Granison was aware of any grievances or lawsuits filed by Plaintiff. (Id. at 9.)  Thus, Plaintiff fails to establish a causal connection between Plaintiff filing grievances and Defendant Granison's actions. Accordingly, Plaintiff fails to state either a First Amendment claim against Defendants based on their alleged retaliatory threats.

### 6.    Plaintiff Fails to State a Claim Based on an Alleged Violation of Prison Regulations

Plaintiff alleges Defendant Hurst, Smith, and Scott's failure to provide Plaintiff a receipt for the store goods they retained violated Georgia Department of Corrections polices.  (Doc. no. 41, p. 10.)  An allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted.  See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting many prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and "such regulations are not designed to confer rights on inmates); Taylor v. White, Civ. No. 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10, 2012) ("A claim based on a prison

official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."), adopted by, 2012 WL 403849 (S.D. Ala. Feb. 7, 2012).  Accordingly, Plaintiff has failed to state a separate claim upon which relief may be granted based on any alleged violation of Georgia Department of Corrections policies.

> ### 7.     Plaintiff Fails to State an Eighth Amendment Use of Force Claim Against Defendant Smith

Plaintiff fails to state an Eighth Amendment use of force claim based on his allegations Defendant Smith pointed a taser at him and threatened to shoot him if he touched the store goods the officers had taken from him.  "[T]he use of force in a prison setting is legitimate when it is applied in good faith to maintain discipline and is not applied maliciously and sadistically to cause harm."  Ledlow v. Givens, 500 F. App'x 910, 912 (11th Cir. 2012) (citing Hudson v. McMillian, 503 U.S. 1, 6 (1992)).  "The Supreme Court has outlined four factors in determining whether the application of force by a jail official was malicious or sadistic:  (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by responsible officials; and (4) any efforts made to temper the severity of the forceful response.  Id. at 912-913 (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Plaintiff does not allege actual force, but instead merely a threat of force to ensure Plaintiff's compliance with the officers' directives.  While the Eleventh Circuit has indicated an excessive force claim based on an "immediate, malicious threat of electric shock . . . would not be indisputably meritless," Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001), Defendant

14

Smith's alleged threat was not malicious but a good faith attempt to maintain discipline. Based on Plaintiff's allegations, the four officers were apparently alone in a room with sixteen inmates, who had just arrived from another prison and were in possession of items the officers had not yet inventoried, and Plaintiff continued to dispute ownership of the goods despite the officer's decision. (Doc. no. 41, p. 7.) Indeed, Plaintiff alleges he continued to argue with the officers about how he came into possession of the store goods after the officer returned some of the store goods and retained the remainder under suspicion they were stolen. (Id.) In this situation, it would not have unreasonable for Defendant Smith to draw her taser and threaten its use in order to prevent Plaintiff from attempting to recover the goods from the officers. Accordingly, Plaintiff cannot state an excessive force claim based on Defendant Smith's alleged threat because it was made in good faith to maintain discipline during the intake process. Ledlow, 500 F. App'x at 912.

### 8.    Plaintiff Fails to State a Valid Claim against Defendant Martin

The Eleventh Circuit has held that a district court properly dismisses a defendant where a plaintiff fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). Plaintiff's only mention of Defendant Martin in his amended complaint is in his defendant list. (Doc. no. 41, pp. 2, 5.) On December 14, 2018, Plaintiff filed a motion to amend seeking to add claims against Defendant Martin. (Doc. no. 69.) Below, the Court recommends denial of Plaintiff's motion to amend as futile and determines the motion to

15

amend is futile and filed in bad faith with dilatory motive.  See § II.B, *infra*.  Accordingly, because Plaintiff alleges no facts regarding Defendant Martin in his amended complaint, he fails to state a claim against her.

### 9. Plaintiff Fails to State a Deliberate Indifference Claim Against Warden Emmons

Plaintiff fails to state a deliberate indifference to health and safety claim against Warden Emmons based on his alleged failure to correct Defendants Smith, Hurst, and Scott's actions during the intake process.  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted).  To establish such a claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted).  These three elements are evaluated in part by an objective standard and in part by a subjective standard.  See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).  As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard.  The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective.  To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm.  To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

16

Under the subjective component, "[a] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Lane, 835 F.3d at 1308. However, "[i]nferences from circumstantial evidence . . . can be used to show that a prison official possessed the necessary knowledge." Id. Under the objective component, an official responds to a known risk in an objectively unreasonable manner if "he knew of ways to reduce the harm but knowingly declined to act" or if "he knew of ways to reduce the harm but recklessly declined to act." Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995).

Here, Plaintiff fails to state a claim against Warden Emmons because he fails to allege any facts indicating:  (1) he faced a substantial risk of serious harm at the time he spoke with Warden Emmons or (2) Warden Emmons had any knowledge of an impending risk of serious harm to Plaintiff.  Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) ("Without alleging facts indicating [defendants] had subjective knowledge of the impending attack, [plaintiff's] claim that they violated his Eighth Amendment rights by failing to prevent the attack fails.")  Warden Emmons only learned of Defendants' alleged actions after they occurred, and there is no allegation Warden Emmons directed Defendants to act in this manner by specific commands or any policy or custom.  Thus, Plaintiff does not allege any facts at all suggesting he faced a risk of future harm at the time he met with Warden Emmons or indicating Warden Emmons was subjectively aware of such a risk based on Plaintiff's report of the officer's past conduct.

Accordingly, Plaintiff fails to establish a deliberate indifference to a substantial risk of serious harm claim against Warden Emmons.

### 10. Plaintiff Fails to State Official Capacity Claims Against Defendants for Monetary Damages

Plaintiff sues Defendants "individually and in their official capacities." (Doc. no. 41, p. 2.) However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims for monetary relief against Defendants fail as a matter of law and should be dismissed.

### 11. Plaintiff is Not Entitled to the Injunctive Relief He Seeks

As injunctive relief, Plaintiff seeks: (1) return of his store goods; (2) a tennis shoe profile; (3) a decision on his clemency application by Georgia's State Board of Pardons and Paroles within thirty days; and (4) cancellation of all obligations on Plaintiff's inmate account.

Plaintiff is not entitled to injunctive relief regarding his tennis shoe profile, clemency application, and inmate account obligations because the matters complained of concern separate incidents than his claims in this lawsuit. "A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997), *opinion amended on other grounds on reh'g*, 131 F.3d 950 (11th Cir. 1997); see also Bruce v. Reese, 431 F. App'x 805, 806 (11th Cir. 2011) ("[Plaintiff's] request for injunctive relief as to those causes of action was thus properly denied as they were as

18

outside the scope of the underlying suit.") (citations omitted); <u>Head v. Gammage</u>, CV 316-039, 2018 WL 1920171, at *2 (S.D. Ga. Apr. 24, 2018) (denying Plaintiff's request for injunctive relief because the relief sought concerned computer access and the suit concerned Defendants failure to protect him from a substantial risk of serious harm).

With the exception of the clemency application, Plaintiff does not mention these issues at all in the body of his amended complaint, and Plaintiff does not attempt to raise a claim regarding the State Board of Pardons and Paroles' treatment of his clemency application.  Furthermore, while Plaintiff discusses the clemency application in relation to Warden Caldwell's alleged withholding of the application, the Court lacks jurisdiction to enter any restraining order or injunction against the State Board of Pardons and Paroles because they are not parties to this lawsuit.  <u>Holmes v. Williams</u>, No. 6:15-cv-12, 2015 WL 4429092, at *8 (S.D. Ga. July 20, 2015) (citing <u>In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Labs.</u>, 72 F.3d 842, 842-43 (11th Cir. 1995)).

Finally, as to Plaintiff's request for the return of his store goods, the Court has recommended dismissal of Plaintiff's due process claims based on the existence of a postdeprivation remedy.  <u>See</u> § I.B.2, *supra*.  Accordingly, because Plaintiff fails to state a claim regarding his store goods as to Defendants' actions, Plaintiff is not entitled to the return of his store goods as relief in this lawsuit.

## II.    PLAINTIFF'S MOTIONS TO AMEND

### A.    Background

On October 12, 2018, the Presiding District Judge ordered Plaintiff to file an amended complaint containing all of his allegations in one document and ordered Plaintiff to use the

standard form provided along with the Order and attach no more than six handwritten pages. (Doc. no. 29, pp. 8-11.)  Plaintiff filed his amended complaint on November 5, 2018, and attached six handwritten pages containing his statement of facts.  (Doc. no. 41, pp. 7-12.)  On December 14, 2018, Plaintiff filed a motion to amend his amended complaint to include claims against Officer Jan Martin.  (Doc. no. 69.)  On January 15, 2019, Plaintiff filed a second motion to amend to add Jamal Foreman as a defendant and add claims against Defendants.  (Doc. no. 99.)

Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading more than twenty-one days after serving it "with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Courts should freely allow amendment.  See Carter v. Broward Cty. Sheriff's Dep't Med. Dep't, 558 F. App'x 919, 923 (11th Cir. 2014) (citing Forman v. Davis, 371 U.S. 178, 182 (1962)); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  However, "[a] . . . court may deny such leave where there is substantial ground for doing so, such as undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment."  Muhammad v. Sapp, 494 F. App'x 953, 958 (11th Cir. 2012) (quoting Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008)).  An amendment is futile when the pleading that it seeks to amend would still be subject to dismissal if the amendment were permitted.  See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) ("A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'") (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007)).

**B.** **First Motion to Amend**

Plaintiff's first motion to amend, including exhibits, consists of seventeen pages, making it nearly as long as his amended complaint. (Id.)  In support of his motion, Plaintiff states it "appears" he mistakenly failed to allege any facts or raise any claims against Officer Martin in his amended complaint. (Id. at 1, n.1.)  Indeed, Plaintiff named Officer Martin as a Defendant in his amended complaint but does not mention him otherwise. (See doc. no. 41.)  Plaintiff noted in his amended complaint some claims and defendants were not included because there was no space, however, Plaintiff used more than two of his handwritten pages to repeat allegations already stated on the first few handwritten pages. (Id. at 7-12.)  Thus, it appears Plaintiff's motion to amend is a bad faith attempt to circumvent the Presiding District Judge's prior order regarding how Plaintiff was to re-draft his complaint, where Plaintiff did not adequately use the page limit granted to him.

Furthermore, the proposed amendment is futile because Plaintiff's claim against Officer Martin is without legal merit.  Plaintiff alleges Officer Martin violated Plaintiff's "equal due process" rights by accepting service of process for the five originally named Defendants on October 4, 2017, when he was not authorized to do so. (Doc. no. 69, p. 2.)  Additionally, Plaintiff alleges Officer Martin's action was the result of GDC and Warden Emmons and Caldwell's failure to train their employees and Defendants conspired to violate Plaintiff's rights by having Officer Martin accept service for them. (Id. at 3.)  However, the Court has been unable to find any precedent in support of the premise that accepting service for another without authorization constitutes a violation of the rights of the individual seeking to effect service actionable under § 1983.  Additionally, the Court cannot discern any

effect Officer Martin's alleged actions have had on this litigation, as Plaintiff has now had the opportunity to amend his complaint to include all the claims brought in his earlier complaints and all Defendants named in his amended complaint – including all the Defendants for whom Officer Martin accepted service – have appeared and responded to Plaintiff's amended complaint.

Accordingly, because Plaintiff's amended complaint was filed in bad faith contravention of the Presiding District Judge's October 12th Order and, moreover, Plaintiff's proposed amendment would be futile for failing to state a claim, Plaintiff's first motion to amend should be **DENIED**.  (Doc. no. 69.)

C.      **Second Motion to Amend**

On January 15, 2019, Plaintiff filed a second motion to amend his complaint, seeking to add Jamal Foreman as a defendant and add additional claims against Defendants.  (Doc. no. 99.)   As to Jamal Foreman, Plaintiff contends he is the fourth, heretofore unknown officer, who was present during the intake process at JSP, and he only learned of his identity because of Defendants' filings in support of their motions to dismiss.  (Id. at 1-3.)

Plaintiff's attempt to add Mr. Foreman based on the allegations in his amended complaint are futile because, as described above, Plaintiff cannot state a claim against the officers involved, including Mr. Foreman, for their actions during the intake process.  See §§ I.B.2-6, *supra*.   Accordingly, because Plaintiff fails to state a valid claim against Mr. Foreman for his alleged conduct during the intake process, Plaintiff's proposed amendment would be futile and Plaintiff's second motion to amend his complaint should be **DENIED**. (Doc. no. 99.)

### III.   WARDEN CALDWELL AND DEFENDANT GRANISON'S MOTION TO DISMISS

Before the Court is Defendant Emmons, Jackson, Granison, Caldwell, and Martin's motion to dismiss, in which they seek dismissal of all claims against them.  (Doc. no. 83.)  In light of the Court's screening of Plaintiff's amended complaint, which recommends dismissal of all claims against Defendants Emmons, Jackson, and Martin for failure to state a claim, the motion to dismiss should be **DENIED AS MOOT** as to these Defendants.  In his motion to dismiss, Warden Caldwell argues:  (1) Plaintiff fails to state due process, equal protection, and Eighth Amendment conditions of confinement claims against him; (2) he is protected by sovereign and qualified immunity; and (3) Plaintiff is not entitled to the injunctive and monetary relief he seeks.  (Id. at 4-5, 13-18.)  The Court also considers Plaintiff's remaining claims against Defendant Granison.

### A.   Legal Standard for Rule 12(b)(6) Motion

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the amended complaint, not whether the plaintiff will ultimately prevail on the merits.  Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014).  The Court must accept as true all facts alleged in the amended complaint and draw all reasonable inferences in Plaintiff's favor.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

### B.     Plaintiff's Claims are Not Due to Be Dismissed Based on Sovereign Immunity

Warden Caldwell argues Plaintiff's entire amended complaint should be dismissed because Plaintiff only sues Defendants in their official capacities and, as such, his claims are barred by sovereign immunity. (Doc. no. 83-1, p. 4.) Warden Caldwell cites Plaintiff's amended complaint in support. (Id.; doc. no. 41, pp. 3-5.) Warden Caldwell's argument fails because Plaintiff specifically stated he was suing Defendants "in their official capacities and individual capacities" in his amended complaint. (Doc. no. 41, p. 2.) Nevertheless, the Eleventh Amendment bars official capacity claims against state prison officials for money

24

damages.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Plaintiff's official capacity claims

for monetary relief against Warden Caldwell fail as a matter of law and should be dismissed.

C.     **Plaintiff Fails to State a Due Process Claim Against Warden Caldwell for Being Placed in Isolation**

Prisoners have "no constitutionally protected liberty interest in being classified at a

certain security level or housed in a certain prison."  Kramer v. Donald, 286 F. App'x 674,

676 (11th Cir. 2008); see also Meachum v. Fano, 427 U.S. 215, 223-24 (1976) (finding no

liberty interest in transfer to less agreeable prison).  However, there are two instances in

which a prisoner may claim a protected liberty interest has been violated by placement in

punitive segregation:  the placement (1) "will inevitably affect the duration of his sentence";

or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life."  Sandin, 515 U.S. at 484, 486.  As Plaintiff has not alleged his

placement in administrative segregation extended the length of his incarceration, the Court

turns to the "atypical and significant hardship" prong.

"It is plain that the transfer of an inmate to less amenable and more restrictive

quarters for non-punitive reasons is well within the terms of confinement ordinarily

contemplated by a prison sentence."  Al-Amin, 165 F. App'x at 738-39 (citing Hewitt v.

Helms, 459 U.S. 460, 468 (1983), *modified on other grounds*, Sandin, 515 U.S. at 481)); see

also Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991) (stating Due Process Clause

does not "create 'an interest in being confined to a general population cell, rather than the

more austere and restrictive administrative segregation quarters.'" (citation omitted)).  Thus,

the Court must consider whether a deprivation of in-prison benefits "impose[s] atypical and

significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Hill v. Sellars, No. 5:15-CV-00453, 2016 WL 7972197, at *5 (M.D. Ga. Nov. 17, 2016) (citing Sandin, 515 U.S. at 484 and Wilkinson v. Austin, 545 U.S. 209, 223 (2005)), *adopted by*, 2017 WL 343638 (M.D. Ga. Jan. 23, 2017).  To meet this pleading requirement, Plaintiff "must state or allege *facts* to show an 'atypical and significant hardship.'"  Gilyard v. McLaughlin, No. 5:14-CV-185, 2015 WL 1019910, at *7 (M.D. Ga. Mar. 9, 2015).  Stated otherwise, for the Court to determine whether the state has created a protected liberty interest, Plaintiff must allege sufficient facts about the "ordinary incidents of prison life" and the conditions of confinement he experiences to state a plausible claim for relief.  See Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013); Hill, 2016 WL 7972197, at *5.

Plaintiff does not provide any information about the typical conditions at JSP, thus, there is no baseline of typical conditions against which Plaintiff could plausibly allege the conditions of confinement in administrative segregation impose a significant hardship.  See Gilyard, 2015 WL 1019910, at *6-7 (dismissing Due Process claim where plaintiff made little or no mention of conditions of prisoners not in administrative segregation, thereby failing to establish protected liberty interest); Watkins v. Humphrey, Nos. 5:12-CV-97 and 5:12-CV-118, 2014 WL 6998102, at *1-2 (M.D. Ga. Dec. 10, 2014) (dismissing Due Process claim where plaintiff failed to provide facts comparing his conditions of confinement those in general population).  As Plaintiff has not plausibly alleged atypical and significant hardship, he fails to establish he has a protected liberty interest.  Accordingly, Plaintiff fails to state a procedural due process claim against Warden Caldwell.

26

Plaintiff does not appear to allege a substantive due process claim.  However, in an abundance of caution, the Court will address any such potential claim.  As with his procedural due process claim, Plaintiff must first establish an atypical and significant hardship implicating a constitutionally protected liberty interest in order to state a substantive due process claim based on prison conditions.  See Smith v. Deemer, 641 F. App'x 865, 868-69 (11th Cir. 2016) (holding prisoner plaintiff fails to state substantive and procedural due process claims regarding conditions of confinement because he did not allege facts sufficient to establish constitutionally protected liberty interest); Hill, 2016 WL 7972197, at *7 (same).  Thus, Plaintiff fails to state a due process claim against Warden Caldwell.

### D.     Plaintiff Fails to State an Equal Protection Claim Against Warden Caldwell

Plaintiff fails to state an equal protection claim against Warden Caldwell based on any of his allegations.  "To establish an equal protection claim, a prisoner must demonstrate (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race."  Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001); see also Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) (requiring plaintiff to demonstrate challenged action was motivated by intent to discriminate in order to establish equal protection violation).

First, Plaintiff fails to allege any comparators who received more favorable treatment by Warden Caldwell.  Second, Plaintiff does not state Warden Caldwell's allegedly discriminatory treatment was based on a constitutionally protected interest such as race or

nationality.   In fact, Plaintiff only alleges Warden Caldwell's actions were based on a retaliatory motive.   Accordingly, Plaintiff fails to state an equal protection claim against Warden Caldwell.

### E.   Plaintiff Fails to State a Claim Based on Warden Caldwell Allegedly Withholding His Clemency Application

Plaintiff alleges Warden Caldwell withheld his clemency application to the State Board of Pardons and Paroles, which resulted in delayed consideration of the petition.  (Doc. no. 41, pp. 10, 12.)  Plaintiff states the application has been pending with the State Board of Pardons and Paroles for 436 days.  (Id. at 13.)  Even assuming an application for clemency constitutes the type of proceeding cognizable under a legal mail claim, Plaintiff fails to state a claim for legal mail under either a denial of access to the courts or a First Amendment framework.  See generally Al-Amin v. Smith, 511 F.3d 1317 (11th Cir. 2008) (analyzing legal mail violation under both access to courts and free speech).

To state a viable denial of access to the courts claim, a plaintiff must allege "actual injury"; that is, "prison officials' actions . . . must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action" and the inmate "must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials."  Id. at 1332 (quoting Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998); see also Terrell v. Washington, No. CV 308-088, 2009 WL 256002, at *2 (S.D. Ga. Feb. 3, 2009).

Here, Plaintiff alleges Warden Caldwell's withheld his application for clemency, resulting in the State Board of Pardons and Paroles delaying consideration of his application. (Doc. no. 41, pp. 10, 12.)  However, Plaintiff states the application is presently under review.

(Id. at 13.)  Plaintiff does not allege the delay caused by Warden Caldwell has resulted in denial or less favorable treatment of the application.  Furthermore, Plaintiff does not provide details regarding the nature of his application, such that the Court could determine the application was nonfrivolous.  Accordingly, Plaintiff's legal mail claims based on denial of access to the courts fail.

Additionally, Plaintiff fails to state a legal mail claim based on free speech.  In order for an inmate to state a free speech legal mail claim, he must be communicating with his attorney. See Al Amin, 511 F.3d at 1332-34.  Plaintiff alleges the intended recipient of the application was the State Board of Pardons and Paroles.  (Id.)  Therefore, Plaintiff's legal mail claims based on free speech also fail.  Accordingly, Plaintiff fails to state a claim based on Warden Caldwell allegedly withholding his application for clemency.

### F. Defendant Caldwell is Not Entitled to Qualified Immunity for Plaintiff's Remaining Claims

In his motion to dismiss, Warden Caldwell does not address Plaintiff's First Amendment retaliation claim.  Plaintiff alleges Warden Caldwell retaliated against Plaintiff for filing grievances and this lawsuit by placing him in administrative segregation with a gang member without vegetarian meals, showers, blankets, sheets, and changes of clothes. Warden Caldwell also does not address Plaintiff's Eighth Amendment conditions of confinement claim based on the conditions in his cell.  However, Warden Caldwell argues generally he is entitled to qualified immunity as to all claims.  (Doc. no. 93-1, pp. 15-16.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). A defendant carries the initial burden of showing that the contested actions fall within his discretionary authority. <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1264 (11th Cir. 2004). To determine whether a government official's actions fall within his discretionary authority, the Court must "assess whether [the actions] are of a type that fell within the employee's job responsibilities." <u>Id.</u> at 1265.

Once a defendant shows he was engaged in a discretionary function, then the burden shifts to the plaintiff to show (1) violation of a constitutional right; and (2) the right violated was clearly established at the time. <u>Gilmore v. Hodges</u>, 738 F.3d 266, 272 (11th Cir. 2013) (citing <u>Pearson</u>, 555 U.S. at 232). Plaintiff can demonstrate that the right violated was clearly established in three ways.

First, the conduct involved in the case may "so obviously violate[ ] th[e] constitution that prior case law is unnecessary." <u>Terrell v. Smith</u>, 668 F.3d 1244, 1257 (11th Cir. 2012). Second, Plaintiff may show that "a materially similar case has already been decided" at the time of the incident by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court. <u>Id.</u> at 1255. This category consists of cases where "judicial precedents are tied to particularized facts." <u>Id.</u> (citing <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1351 (11th Cir. 2002).) In assessing whether previous cases clearly establish the law, courts ask whether the factual scenario that the official faced "is fairly distinguishable from the circumstances facing a government official in a previous case. If so, the cases are not materially similar and, thus, provide insufficient notice to the official to clearly establish the law." <u>Id.</u> at 1256

(omitting internal quotation marks and citing <u>Vinyard</u>, 311 F.3d at 1352).

Third, Plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation. [S]ome broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." <u>Id.</u> (citations omitted). However, the principle must be established with "'obvious clarity' by the case law so that 'every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" <u>Id.</u> (citation omitted). That is, "in light of pre-existing law the unlawfulness must be apparent." <u>Id.</u> (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).)

The general proposition prison officials may not retaliate against prisoners for filing grievances and lawsuits is clearly established by Eleventh Circuit precedent. <u>Hicks v. Ferrero</u>, 241 F. App'x 595, 598-99 (11th Cir. 2007) ("We concluded as early as 1989 . . . that a prisoner's First Amendment free speech rights are violated when prison officials retaliate against him or her for filing a grievance.") (citing <u>Wildberger v. Bracknell</u>, 869 F.2d 1467, 1468) (11th Cir. 1989) (holding actions taken in retaliation for filing lawsuits and administrative grievances constitute actionable conduct)). The constitutional necessity of providing adequate food, clothing, and safety measures to prisoners is also clearly established by precedent. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) ("prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates'"). Thus, Warden Caldwell is not

entitled to qualified immunity as to either of these claims, when the complaint allegations are taken as true and liberally construed in Plaintiff's favor, as the Court must at this stage.

### G.    Defendant Granison is Not Entitled to Qualified Immunity as to Plaintiff's Free Exercise, RLUIPA, and Eighth Amendment Claims

Above, the Court recommends dismissal of Plaintiff's Eighth Amendment claim based on insults and threats, Equal Protection claim, and First Amendment retaliation claim against Defendant Granison.  See, §§ I.B.3-5., supra.  In a simultaneously-filed Order, the Court finds Plaintiff arguably states First Amendment free exercise, RLUIPA, and Eighth Amendment conditions of confinement claims against Defendant Granison based on her failure to provide Plaintiff with vegetarian meals.  Defendant Granison does not address these claims in her motion to dismiss either on the merits or regarding her general claim of qualified immunity.  (See doc. no 83-1, p. 13, 15-16.)

Nevertheless, relevant precedent suggests Defendant Granison is not entitled to qualified immunity as to these claims at this early pleadings stage.  See Rich v. Sec'y, Florida Dep't of Corr., 716 F.3d 525, 532 (11th Cir. 2013) (finding policy of not providing kosher meals substantially burdened religious exercise under RLUIPA); Harris v. Ostrout, 65 F.3d 1499, 1505-06 (11th Cir. 1987) (stating plaintiff asserted valid Eighth Amendment claim where he alleged prison refused to offer adequate vegetarian diet); Hathcock v. Cohen, 287 F. App'x 793, 801 (11th Cir. 2008) ("A jail should accommodate an inmate's religious dietary restrictions, subject to budgetary and logistical limitations, but only when the belief is 'truly held.'") (citing Martinelli v. Dugger, 817 F.2d 1499, 1504-06, 1508 (11th Cir. 1987), abrogation recognized by Harris v. Chapman 97 F.3d 499, 503 (11th Cir. 1996) (noting

Religious Freedom Restoration Act of 1993 changed standard for burden on exercise of religion relied on in <u>Martinelli</u>).

Accordingly, Defendant Granison is not entitled to qualified immunity at this stage. Nevertheless, if she desires, Defendant Granison may reraise the defense of qualified immunity at summary judgment in light of the evidence obtained from discovery.

### H. Plaintiff Can Seek Compensatory and Punitive Damages but Is Not Entitled to the Injunctive Relief He Seeks

Defendants argue Plaintiff is not entitled to the injunctive relief he seeks and cannot obtain compensatory and punitive damages because he cannot show more than *de minimis* physical injury. (Doc. no. 83-1, pp. 17-18.) The Court recommends Plaintiff's requests for injunctive relief be dismissed from this lawsuit in § I.B.10, *supra*.

As to his demand for compensatory and punitive damages, 42 U.S.C. § 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

The Eleventh Circuit has held 42 U.S.C. § 1997e is constitutional and that Congress has left open avenues for other types of relief that are ample for constitutional purposes. <u>Harris v. Garner</u>, 190 F.3d 1279, 1287-89 (11th Cir. 1999), <u>rev'd in part on other grounds</u>, 216 F.3d 970 (11th Cir. 2000). Accordingly, a prisoner cannot recover compensatory or punitive damages on a claim where he has suffered no physical injury. <u>See, e.g.</u>, <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1196 (11th Cir. 2011) (holding prisoner could not maintain claim for punitive damages for prison opening his legal mail). To survive application of the §

1997e(e) bar, the physical injury must be more than *de minimis*.  <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1312-13 (11th Cir. 2002).

Plaintiff alleges he suffered migraine headaches, stomach pains, dizziness, and hunger because of his conditions of confinement and not receiving vegetarian meals.  (Doc. no. 41, p. 13.)  Plaintiff also alleges he starved for twenty-one days because Warden Caldwell instructed officers to house Plaintiff in administrative segregation without food.  (<u>Id.</u> at 12.) However, Plaintiff also states he would occasionally wait all day for a tray but none was brought, (<u>id.</u> at 9), indicating Plaintiff received some meals at times.  Although Plaintiff's allegations appear inconsistent and he does not allege any additional details regarding how often he received food and ate, the Court cannot say as a matter of law Plaintiff's injuries from a lack of food were merely *de minimis*.  Accordingly, Plaintiff is not barred from seeking compensatory and punitive damages by § 1997e(e).

## IV.   PLAINTIFF'S MOTION FOR AN ORDER REGARDING SERVING NUMEROUS DEFENDANTS

On January 11, 2019, Plaintiff filed his "Motion for an Order Serving Numerous Defendants Rule 5(c)(1) in General," in which he argues he should not be required to serve copies of all his filings on each Defendant because he is indigent and does not have enough supplies to serve a copy of his filings on all Defendants, and asks the Court to enter an Order requiring the Clerk of Court to serve a copy of his filings on counsel for Defendants.  (Doc. no. 98.)

As the Court previously informed Plaintiff, he shall serve upon the defendants, or upon their defense attorney if appearance has been entered by counsel, a copy of every further

pleading or other document submitted to the Court.  (Doc. no. 44, p. 2.)  Despite being warned against his practice of "paper warfare" by the Presiding District Judge, Plaintiff has filed over six hundred pages of motions, responses, objections, and other filings since this case was removed on August 9, 2018.  Furthermore, Plaintiff filed six additional motions, comprising over three hundred pages, since filing the present motion. (Doc. nos. 99, 100, 106, 107, 108, 109.)  Plaintiff cannot legitimately complain about a lack of resources.  The Court sees no reason to excuse Plaintiff from the basic requirement of serving his filings on the opposing parties he brought into this lawsuit.  Furthermore, Federal Rule of Civil Procedure 5(c) allows the Court to excuse defendants from having to serve other defendants in the case when there are an unusually large number of defendants.  It does not provide a means for excusing a plaintiff from doing so. Accordingly, the Court recommends Plaintiff's motion regarding service of filings on Defendants be **DENIED**.  (Doc. no. 98.)

## V.    PLAINTIFF'S ADDITIONAL MOTIONS

On January 18, 2019, Plaintiff filed a motion for sanctions, motion for default judgment against Defendant Hurst, and a 209-page motion for summary judgment.  (Doc. nos. 106, 107, 109.)  These motions are the epitome of the type of vexatious and malicious litigation against which the Court has warned Plaintiff on numerous occasions.  (Doc. no. 29, pp. 5-8; doc. no. 35; doc. no. 42, pp. 1-3.)  Plaintiff's deluge of filings comes right on the heels of his contention he was unable to respond to Defendants' motions to dismiss due to a lack of resources and request that the Court relieve him of the obligation to do so.  (See doc. no. 98.)  Instead of attempting to respond to Defendants' motions to dismiss in a straightforward manner, Plaintiff has further muddied the waters of this case with his most

recent filings.  Now, Plaintiff has the gall to ask the Court to put Defendants' filings on hold and order Defendants to respond his motions, where he has not had the decency to adequately respond to theirs.  (Doc. no. 114, pp. 4-5.)

Finally, Plaintiff's motions are subject to dismissal because he failed to attach a certificate of service indicating he served the motions on <u>all</u> parties to the lawsuit, as required by Federal Rule of Civil Procedure 5(a)(1)(D) and Local Rule 5.1.  (Doc. no. 106, p. 14; doc. no. 107, p. 7; doc. no. 109, p. 39); <u>see also</u> <u>Layfield v. Bill Heard Chevrolet Co.</u>, 607 F.2d 1097, 1099 (5th Cir. 1979)[1] (holding failure to comply with the Local Rules may result in summary denial of motion).  Instead Plaintiff appears to believe it is sufficient to serve his motions on only one defense counsel or another, indiscriminately.  It is not.  Thus, Plaintiff's motions should be **DENIED** as frivolous, vexatious, and procedurally improper.  (Doc. nos. 106, 107, 109.)

Here, the Court recommends narrowing the present case to Plaintiff's only *arguably* meritorious claims.  Should Plaintiff wish to file a motion for summary judgment, he may do so at the proper time after discovery has closed.  If Plaintiff continues filing motions solely for the purpose of harassment and in an attempt to waste the resources of this Court, his case will be dismissed with prejudice.  This will be the Court's final warning to Plaintiff.

## VI.   PLAINTIFF'S "APPEARANCE TRAVERSE"

Finally, on January 3, 2019, Plaintiff filed an "Appearance Traverse to Defendants'

---

[1]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

Notice of Removal," in which he argues the Court should "revoke" Defendants' notice of removal because attorney William Peters could not represent Defendants Hurst, Smith, and Scott at the time of removal because they are no longer state employees, and, thus, removal was procedurally improper.  (Doc. no. 93.)  The Presiding District Judge previously decided removal to this Court was proper and denied Plaintiff's motion to remand and motion for reconsideration.  (Doc. nos. 29, 42.)  Furthermore, under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  Almost four months passed between Defendants' notice of removal and Plaintiff's filing.  Accordingly, Plaintiff is not entitled to any sort of relief based on his filing.

## VII.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claims against Defendants Jackson, Smith, Hurst, Scott, Emmons, and Martin be **DISMISSED** for failure to state a claim upon which relief may be granted, Defendants Jackson, Smith, Hurst, Scott, Emmons, and Martin be dismissed from this case, Defendant Caldwell, Granison, Jackson, Emmons, and Martin's motion to dismiss be **GRANTED IN PART** and **DENIED IN PART** as to Defendants Caldwell and Granison and **DENIED AS MOOT** as to Defendants Jackson, Emmons, and Martin, (doc. no. 83), and Plaintiff's motions to amend, motion regarding service, and motions for sanctions, default judgment, and summary judgment be **DENIED**, (doc. nos. 69, 99, 98, 106, 107, 109).

Furthermore, based on the Court's recommendation and simultaneously filed Order, the following motions should be **DENIED AS MOOT**:

1)      Defendant Smith's motion to dismiss, (doc. no. 71);

2)      Defendant Hurst's motion to dismiss, (doc. no. 82);

3)      Defendant Scott's motion to dismiss, (doc. no. 84);

4)      Defendant Caldwell, Emmons, Granison, Jackson, and Martin's motion to stay discovery pending resolution of their motion to dismiss, (doc. no. 86);

5)      Defendant Caldwell, Emmons, Granison, Jackson, and Martin's motion for a protective order pending resolution of their motion to dismiss, (doc. no. 89);

6)      Defendant Smith's motion for a protective order pending resolution of her motion to dismiss, (doc. no. 92);

7)      Plaintiff's motion to stay his deadline to respond to Defendants' motions to dismiss, (doc. no. 94);

8)      Defendant Hurst and Scott's motion for a protective order and to stay discovery pending resolution of his motion to dismiss, (doc. no. 95);

9)      Plaintiff's motion to strike Defendants' motions for a protective order, (doc. no. 100); and

10)     Plaintiff's motion to strike Defendants' motions to dismiss, (doc. no. 108);

11)     Plaintiff's "Motion to Stay/Deferrals [sic] Rulings on Defendants' Motions to Dismiss and All Others [sic] Defendants' Pending Pleadings, (doc. no. 114); and

12)     Plaintiff's Motion to Expand the Records, (doc. no. 115).

SO REPORTED and RECOMMENDED this 13th day of February, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

38