IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JEAN JOCELYN MERILIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CV 318-056 |
| | ) |
| ANTOINE CALDWELL, Warden, Johnson | ) |
| State Prison, and MS. GRANISON, Kitchen | ) |
| Manager, Johnson State Prison, | ) |
| | ) |
| Defendants. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Wilcox State Prison ("WSP") in Abbeyville, Georgia, is proceeding *pro se* in this case filed pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia.  Before the Court are the parties' cross-motions for summary judgment.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 139), Plaintiff's motions to strike be **DENIED**, (doc. nos. 152, 158), Defendants' motion for summary judgment be **GRANTED**, (doc. no. 145), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

**I.      PROCEDURAL BACKGROUND**

Plaintiff initiated this case in the Superior Court of Johnson County, Georgia, and, on August 10, 2018, Defendants removed the case to this Court.  (Doc. no. 1; doc. no. 1-3.)  On February 13, 2019, the Court screened Plaintiff's amended complaint and allowed to proceed Plaintiff's First Amendment retaliation and Eighth Amendment conditions of confinement claims against Warden Caldwell and Plaintiff's First Amendment free exercise, Religious

Land Use and Institutionalized Persons Act ("RLUIPA"), and Eighth Amendment conditions of confinement claims against Defendant Granison. (Doc. no. 120.) On March 20, 2019, the Court dismissed all claims against the remaining six Defendants. (Doc. no. 125.) Before the Court are cross motions for summary judgment. (Doc. nos. 139, 145.)

Plaintiff submitted an untimely statement of facts forty-nine days after Defendants filed their summary judgment motion, which does not satisfy Fed. R. Civ. Pro. 56 or Local Rule 56.1, but instead argues the merits of the exhaustion defense raised in Defendants' summary judgment motion. (Doc. no. 156.) The Court deems admitted all portions of Defendants' Statement of Undisputed Material Facts, (doc. no. 145-2), that have evidentiary support in the record and are not properly opposed by Plaintiff as contemplated under Rule 56 and Local Rule 56.1.[1] See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) ("[A]ll unopposed fact statements supported by the evidentiary materials of record are deemed admitted). The amended complaint is not verified, but Plaintiff did sit for a deposition. The Court will review the entire evidentiary record, including Plaintiff's deposition, "to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588

---

[1] Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

F.3d 1291, 1303 (11th Cir. 2009).

## II.     FACTUAL BACKGROUND

There are two distinct but related series of events according to Plaintiff.  The first, occurring in March and April 2017, concerns Defendant Granison's alleged refusal to provide vegetarian trays.  Plaintiff was transferred from Hayes State Prison to JSP in March 2017.  (Pl.'s Dep., doc. no. 151-1, pp. 47-48[2].)  From March 27, 2017, through April 8, 2017, Defendant Granison intentionally denied Plaintiff vegetarian trays, which Plaintiff requested because he is "Haitian Christian Catholic."  (Pl.'s Dep., p. 43; Pl.'s Aff., doc. no. 139, p. 16.)  Plaintiff starved until the warden instructed Defendant Granison to provide Plaintiff with vegetarian trays.  (Pl.'s Dep., p. 49.)  Every time Plaintiff was in the kitchen with Defendant Granison, she insulted and harassed Plaintiff, cursed him, and questioned his dietary restrictions.  (Id. at 48.)  Plaintiff was transferred to WSP after he filed a grievance concerning Defendant Granison.  (Id. at 52.)

Defendant Granison denies these allegations.  She is the Food Services Director at JSP and is responsible for supervising the preparation and distribution of food to inmates. (Granison Decl., doc. no. 147-2, ¶¶ 2-3.)  Defendant Granison does not feed the inmates directly and does not have regular interaction with them.  (Id. ¶ 4.)  JSP is not equipped to provide the "Alternative Entree Meal Plan," which includes a vegan meal plan and restricted vegan meal plan at other GDC facilities.  (Id. ¶ 6.)  Although JSP does not provide the "Alternative Entree Meal Plan," an inmate's request for a meal with no meat, fish, or eggs,

---

[2]Because Plaintiff's deposition was filed in Minu-Script, the Court cites to the relevant deposition page number, not the page number assigned by the Court's docketing system.

will be accommodated by the food services staff in certain cases. (Id. ¶ 7.) Defendant Granison does not recall speaking with Plaintiff on any occasion and did not refuse to provide him a vegan meal. (Id. ¶¶ 8-9.)

The second series of events began on April 5, 2018, when Plaintiff was transferred back to JSP for a court date on April 10, 2018. (Pl.'s Aff., p. 15; Pl.'s Dep., p. 24.) Plaintiff alleges Warden Caldwell threatened to punish him for filing grievances and lawsuits. (Pl.'s Dep., p. 26.) Warden Caldwell placed Plaintiff in a holding cell for twenty-one days with a Blood gang member, who had recently stabbed another inmate, because Warden Caldwell wanted Plaintiff to be injured. (Pl.'s Aff., p. 15.) Warden Caldwell instructed the officers not to give Plaintiff a blanket, sheet, pillow, or change of clothes. (Id.) Plaintiff only received a dirty mattress. (Id.) Plaintiff's cell was unsanitary because the bathroom would overflow and not drain for days, leaving feces on the floor. (Pl.'s Dep., pp. 32-33.)

Warden Caldwell instructed Defendant Granison not to provide vegetarian trays to Plaintiff. (Id. at 23.) Some days, Plaintiff did not receive a meal and occasionally went three to four days without a shower. (Id. at 37.) When Plaintiff was given food, it was not vegan. (Id. at 39.) Although the meals were available, Defendants denied Plaintiff a vegan diet for more than nineteen days, from April 5, 2018 through April 26, 2018. (Pl.'s Aff., p. 16.) Plaintiff starved for twenty-one days in retribution for his grievances and lawsuit. (Pl.'s Dep., p. 33.) As a result of Defendants' actions, Plaintiff suffered starvation, humiliation, physical injuries, migraine headaches, stomachaches, dizziness, extreme emotional distress, and mental anguish. (Pl.'s Aff., p. 17.)

Warden Caldwell denies these allegations, testifying by affidavit he did not instruct officers to place Plaintiff in a segregation cell with a Blood gang member out of retaliation for filing a lawsuit and grievances and did not tell Plaintiff he would be punished for such. (Warden Caldwell Decl., doc. no. 147-3, ¶¶ 10-11.) Warden Caldwell did not instruct officers to withhold a blanket, sheets, pillow, clothes, showers, or food. (Id. ¶ 13.) Warden Caldwell did not instruct officers to provide Plaintiff with a dirty mattress nor did he instruct Defendant Granison not to provide vegetarian meals to Plaintiff. (Id. ¶¶ 13-14.)

Instead, Plaintiff was transferred to JSP from WSP on April 5, 2018, pursuant to a court production order and was placed in a segregation cell pursuant to Georgia Department of Corrections ("GDC") policy. (Id. ¶¶ 3-4.) Prison officials check segregation cells to ensure there is no contraband, and an inmate is only placed in the cell if it is sanitary and fit for habitation. (Id. ¶ 6.) The inmate is provided a mattress, pillow, blanket, sheets, face cloth, towel, soap, deodorant, and adequate food, water, and clothing. (Id. ¶¶ 7-8.) When transferred to a facility pursuant to a court production order, an inmate is permitted to bring a change of clothes, personal hygiene items, and legal material. (Id. ¶ 7.) If prison officials are informed a toilet is overflowing and flooding the cell, a work order is placed to repair the toilet and the cell is cleaned by a prison staff member or an orderly. (Id. ¶ 9.)

Plaintiff filed two grievances related to his claims. (Wilson Dec., doc. no. 145-3, ¶¶ 19-20 & Attachs. 4, 6.) On April 6, 2017, Plaintiff filed grievance number 240984 while incarcerated at JSP, alleging Defendant Granison failed to provide him with a vegetarian tray for "days/weeks," even though she was asked to do so. (Id. ¶ 19 & Attach. 4, p. 47.) Plaintiff alleged Defendant Granison was biased against him because of his Haitian nationality and

5

religious beliefs. (Id., Attach. 4, p. 47.) Plaintiff asked for a revision to his inmate profile, noting his preference for vegetarian trays, and requested Defendant Granison provide meals without bias toward Plaintiff. (Id.) The Grievance Coordinator recommended denying the grievance on April 21, 2017, because Defendant Granison denied showing any racial bias, Plaintiff was given a vegetarian tray on April 5, 2017, and Plaintiff did not have a meat allergy. (Id. at 48.) The Warden denied the grievance on April 28, 2017, and Plaintiff was notified of the denial on May 3, 2017. (Id. at 57.) Plaintiff filed an appeal on May 3, 2017, which was denied on October 12, 2017. (Id., Attach. 5, p. 61.)

On April 26, 2018, Plaintiff filed grievance number 266050 while incarcerated at WSP, alleging Warden Caldwell placed him in a cell with a Blood gang member out of retaliation for filing grievances and a lawsuit. (Id. ¶ 20 & Attach. 6.) Plaintiff further alleged deprivation for nineteen days of food, clothes, shower shoes, blankets, and sheets. (Id., Attach. 6, pp. 63-64.) Plaintiff also alleged Defendant Granison failed to provide him with vegetarian trays, at Warden Caldwell's directive, and his meals consisted of uncooked black or red beans with squash. (Id. at 64.) Plaintiff asked Warden Caldwell to explain why he violated Plaintiff's rights and demanded $60,000,000 in compensation. (Id. at 63.) The Grievance Coordinator rejected the grievance on May 15, 2018, because the grievance addressed more than one issue in violation of the grievance procedure. (Id. at 65.) Plaintiff filed an appeal of the grievance rejection on May 29, 2018, and the Warden denied the grievance on June 8, 2018. (Id. at 67, 69.) The Central Office denied the appeal on September 11, 2018, because Plaintiff grieved multiple issues and failed to properly follow the grievance procedure. (Id. at 69-70.)

### III. DISCUSSION

#### A. Plaintiff's Motions to Strike

Plaintiff moves the Court to strike Defendants' response to his motion for summary judgement and Defendant Granison's declaration, arguing they are misleading. (Doc. nos. 152, 158.) These motions should be denied because motions to strike under Fed. R. Civ. Pro. 12(f)(a) are limited to pleadings, narrowly defined as complaints and answers, and the filings targeted by Plaintiff are not pleadings. See Chavez v. Credit Nation Auto Sales, Inc., 966 F. Supp. 2d 1335, 1344 (N.D. Ga. 2013) (denying motion to strike because declarations are not pleadings); Foliar Nutrients, Inc. v. Plant Food Sys., Inc., No. 613CV748ORL37KRS, 2014 WL 12625978, at *1 (M.D. Fla. July 14, 2014) (same); Lowery v. Hoffman, 188 F.R.D. 651, 653 (M.D. Ala. 1999) (concluding briefs and affidavit not proper targets of motion to strike).

#### B. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by

7

negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### C. Defendants' Motion for Summary Judgment

Defendants contend Plaintiff failed to exhaust his administrative remedies prior to filing suit. (Doc. no. 145-1.) Defendant Granison also seeks summary judgment on Plaintiff's RLUIPA claim, contending the Act does not authorize individual capacity claims and the official capacity claim is barred by the Eleventh Amendment and sovereign immunity. (Id. at 9-10.) Plaintiff contends he exhausted, Defendants waived the exhaustion defense by removing the action to federal court, and Defendants made misleading statements to the Court.

(See generally doc. no. 151.) The Court finds Plaintiff failed to exhaust and summary judgment is proper on this basis alone, without consideration of Defendants' remaining summary judgment arguments.

### 1. The Legal Framework for Determining Exhaustion

The Eleventh Circuit has laid out a two-step process for motions to dismiss and summary judgment motions raising the exhaustion defense. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. See Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until

9

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner

10

fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### 2. The Administrative Grievance Procedure

Upon admission to GDC, prisoners receive an oral summary of the grievance procedures and an outline in their Orientation Handbook, and prisoners may review the complete grievance procedures, as set forth in GDC Standard Operating Procedures ( SOP"), in the law library of each GDC facility. (Wilson Dec., ¶ 8.) Two versions of the SOP apply here based on the timeline of Plaintiff's allegations and grievances.

#### i. SOP IIB05-0001, Effective Date of July 20, 2015

The grievance Plaintiff filed while incarcerated at JSP was subject to the requirements of SOP IIB05-0001, Policy No. ("PN") 227.02, which became effective on July 20, 2015. (See Wilson Dec. & Attach. 1, doc. no. 145-3.) The administrative remedies procedure commences with the filing of the Original Grievance, and the inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to sign the Original Grievance and give it to a Counselor. (Attach. 1, doc. no. 145-3, § VI(D)(1)-(4).) "The complaint on the Grievance Form must be a single issue/incident." (Id. § VI(D)(2).) Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. (Id. § VI(D)(3), (5)(a).) If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. (Id. § VI(D)(5)(f).)

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. (Id. § VI(D)(6).) After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. (Id.) The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. (Id.) The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision, but a onetime ten calendar day extension may be granted. (Id. § VI(D)(7).)

The inmate then has seven calendar days from the date they receive the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. (Id. § VI(E)(2).) If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. (Id. §§ VI(E)(3)-(4).) The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete. (Id. § VI(E)(7).)

An inmate is limited to two active grievances. (Id. § VI(B)(5)(a).) In order to file a new grievance while he has two pending, the inmate must drop one of the outstanding grievances. (Id. § VI(B)(5)(a)(1).) If the inmate does not want to drop one of his outstanding grievances, the third grievance will not be processed. (Id.) The following three types of grievances do not count toward the two grievance limit: (1) emergency grievances; (2) grievances that involve allegations of physical abuse with significant injury to the inmate or sexual assault; and (3) grievances that the Grievance Coordinator determines involves an

important issue of prison security or administration, such as a serious threat to life, health, or safety of any person.  (Id. § VI(B)(5)(b).)

### ii.        SOP IIB05-0001, Effective Date of February 26, 2018

The grievance Plaintiff filed while incarcerated at WSP was subject to the requirements of SOP IIB05-0001, PN 227.02, which became effective on February 26, 2018.  (See Wilson Dec. & Attach. 2, doc. no. 145-3.)  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  (Attach. 2, doc. no. 145-3, § IV(C).)  The administrative remedies procedure commences with filing the Original Grievance with a counselor.  (Id. § IV(C)(1)(c).)  The counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it for processing or recommend the Warden reject it.  (Id. § IV(C)(1)(e)(i).)  The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  (Id. § IV(C)(1)(d).)  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  (Id.)

The SOP requires the Warden give a response to the counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten-calendar-day extension may be granted.  (Id. § IV(C)(1)(g).)  Once the offender receives the Warden's response, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal.  (Id. § IV(C)(2).)  The inmate has seven calendar days from the date he receives the response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause.  (Id. § IV(C)(2)(b).)  The

Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the offender.  (Id. § IV(C)(2)(e).)

### 3. Plaintiff's Failure to Exhaust

Plaintiff signed the original complaint against Defendant Granison and other defendants on July 29, 2017, and it was filed in the Superior Court of Johnson County on August 25, 2017.  (Doc. no. 1-3.)  Plaintiff filed Grievance Number 240984 on April 6, 2017, alleging Defendant Granison refused to provide him vegetarian trays in violation of his religious beliefs.  (Wilson Dec., ¶ 19 & Attach. 4.)  The Warden denied the grievance on April 28, 2017, and Plaintiff filed an appeal on May 3, 2017.  (Id., Attach. 4, p. 57.)  The commissioner or his designee had 100 days, until August 11, 2017, to respond to the appeal.  (Wilson Dec., ¶ 15.)  The Central Office denied the appeal on October 12, 2017.  (Id. ¶ 19 & Attach. 5.)  Plaintiff does not dispute he signed his original complaint on July 29, 2017, before expiration on August 11th of the 100-day deadline for the Central Office to decide the appeal. However, he claims that because the complaint was not docketed by the Superior Court of Johnson County until August 25, 2017, fourteen days after the August 11th appeal response deadline, he fully exhausted his administrative remedies before filing suit.  (Doc. no. 156, p. 4.)  The Court disagrees.

"The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."  Goebert, 510 F.3d at 1324.  Plaintiff "brought" this legal action when he signed his original complaint on July 29, 2017.  Harris, 216 F.3d at 974.  Under the prison mailbox rule, Plaintiff's complaint is deemed filed when delivered to prison officials for

14

mailing, and the signature date is assumed to be the day of delivery to prison officials. Houston v. Lack, 487 U.S. 266, 275-76 (1988).

The untimely denial of Plaintiff's appeal is irrelevant because Plaintiff filed the complaint while the grievance procedure was incomplete by filing it before expiration of the 100-day deadline. See PN 227.02 § VI(E)(7); see also Jarrell v. Corizon Health Inc., No. 4:17-CV-00153-CDL-MSH, 2018 WL 3419264, at *3 (M.D. Ga. July 13, 2018) (finding Plaintiff failed to exhaust by filing suit before deadline expired for Commissioner to respond to appeal). The untimely denial of Plaintiff's grievance appeal "cannot cure the exhaustion defect" because Plaintiff was required to fully exhaust before pursuing a § 1983 lawsuit. Smith, 491 F. App'x at 83.

Plaintiff filed the second grievance, Grievance Number 266050, against Warden Caldwell on April 26, 2018. (Wilson Dec., ¶ 20 & Attach. 6.) Plaintiff sought to add Warden Caldwell as a new defendant in his Third Amended Complaint, which he signed on April 30, 2018, and the state court docketed on May 8, 2018. (Doc. no. 1-3.) The grievance was rejected by the Grievance Coordinator on May 15, 2018, and Plaintiff filed an appeal on May 29, 2018. (Wilson Dec., Attach. 6, pp. 65, 69.) Plaintiff did not exhaust his administrative remedies because the amended complaint adding Warden Caldwell as a defendant was both signed and docketed before Plaintiff received a grievance response and filed an appeal. Additionally, the Grievance Coordinator rejected the grievance because it raised at least three issues, in violation of the single issue/incident requirement. (Id. at 65.) The exhaustion requirement is not satisfied if a prisoner falls short of compliance with grievance procedural rules. Johnson, 418 F.3d at 1159.

Plaintiff asserts Defendants waived the exhaustion defense by failing to timely assert it and by removing the action to this Court. (Doc. no. 156, pp. 2-3.) Defendants timely raised the exhaustion defense in their answer. (Doc. no. 126, p. 2.) Removal is irrelevant because it does not "change the important historical fact: [Plaintiff's] administrative remedies were unexhausted when he filed his . . . complaint." Smith, 491 F. App'x at 83.

Because the record confirms Plaintiff did not exhaust his administrative remedies, his claims are subject to dismissal and Defendants are entitled to summary judgment. See Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261. Because the motion for summary judgment should be granted based on Plaintiff's failure to exhaust, the Court need not address Defendant Granison's remaining arguments. (See doc. no. 145-1, pp. 9-10.)

### D.     Plaintiff's Motion for Summary Judgment

In light of the Court's conclusion Plaintiff failed to exhaust his administrative remedies, it is unnecessary to address the merits of his motion for summary judgment. Accordingly, Plaintiff's motion for summary judgment should be **DENIED**. (Doc. no. 139.)

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 139), Plaintiff's motions to strike be **DENIED**, (doc. nos. 152, 158), Defendants' motion for summary judgment be **GRANTED**, (doc. no. 145), a final judgment be entered in favor of Defendants, and this civil action be

**CLOSED**.

SO REPORTED and RECOMMENDED this 17th day of August, 2020, at Augusta, Georgia.

                                              _____
                                              BRIAN K. EPPS
                                              UNITED STATES MAGISTRATE JUDGE
                                              SOUTHERN DISTRICT OF GEORGIA